UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------------- X
ELIZABETH MONDSCHEIN,

                Plaintiff,

        – against –

NY 101, INC., *et al.*,

                Defendants.

**MEMORANDUM DECISION AND ORDER**

18-cv-05607 (AMD) (CLP)

------------------------------------------------------------- X
**ANN M. DONNELLY**, United States District Judge:

## INTRODUCTION

The plaintiff filed this employment discrimination and wage and hours action on October 8, 2018 against her former employers, three of her former supervisors and her former employers' attorney, Bradley Gross. (ECF No. 1.) She alleges violations of Title VII of the Civil Rights Act of 1964, the Fair Labor Standards Act, the Executive Law of the State of New York, the Labor Law of the State of New York and the Administrative Code for the City of New York. (*Id.*) On March 15, 2019, defendant Gross moved to dismiss the claims asserted against him. (ECF No. 43.) For the reasons that follow, I deny the motion to dismiss.

## BACKGROUND[1]

The plaintiff was employed full-time by NY 101, Daniel Group and 124 NY as in-house general counsel from February of 2016 to October of 2017.[2] (ECF No. 1 ¶¶ 124-26.)

---

[1] In the complaint and in briefing, the plaintiff's counsel refers to the plaintiff by her first name only. In the future, counsel is to refer to the plaintiff as "the plaintiff" or as Ms. Mondschein.

[2] The plaintiff does not explain how the three companies are related. I refer to the three employers collectively as the plaintiff's "employer," as the plaintiff does in her complaint.

Defendants Ilan Cohen, Joseph Cohen and Yehuda ("Robert") Cohen were her supervisors. (*Id.* ¶¶ 51-59.) Gross was an attorney retained by her employer. (*Id.* ¶¶ 45-47.) She claims that throughout her employment—from "inception" to "discharge"—the three supervisor defendants sexually harassed her, created a hostile work environment and discriminated against her based on her status as female. (*Id.* ¶ 136.) She maintains that similarly-situated males were not subjected to the same treatment. (*Id.*)

She alleges the following examples: Joseph Cohen "repeatedly warned" her to "not get pregnant," "including in front of coworkers" (*id.* ¶ 136(A)); in or about April of 2017, Joseph Cohen "chided" her for being a "naughty girl," and said that she should be "spanked" for her "behavior" (*id.* ¶ 136(B)); when she returned to work following a surgical procedure to remove a potentially cancerous mass from her breast, Joseph Cohen "repeatedly stared at and commented on [her] breasts" and "repeatedly entered her office and attempted to look down her shirt" (*id.* ¶ 136(C)); Joseph Cohen made comments about her breasts after her relationship with her boyfriend had ended (*id.* ¶ 136(D)); Joseph Cohen "repeatedly brushed-up against [her] breasts" (*id.* ¶ 136(E)); Joseph Cohen and Robert Cohen "constantly insisted" that she "enter into an intimate relationship" with a co-worker, and Joseph Cohen introduced her to the co-worker as "our attorney who is single, divorced and Jewish" (*id.* ¶¶ 136(F)-(G)); Joseph Cohen "degrade[d]" her when she met with a male attorney or client (*id.* ¶ 136(H)); on or about July 10, 2017, Joseph Cohen said, while holding a stick, "If you don't do your work, you'll have this stick up your tuchas" (*id.* ¶ 136(I)); on or about July 25, 2017, Robert Cohen told her that she "needs a man" (*id.* ¶ 136(J)); and on or about July 26, 2017, Joseph Cohen, while "holding and gesturing towards his penis," instructed her "to tell adversary counsel in a pending real estate transaction[] to 'suck his dick'" (*id.* ¶ 136(K)).

The plaintiff maintains that she "repeatedly complained throughout her tenure of employment," "implored" her employer and supervisors to "stop engaging in such unwanted actions, conduct and behavior," and asked her employer "to undertake a reasonable investigation and implement reasonable remediation." (*Id.* ¶ 137.) She alleges that she "repeatedly advised" her supervisors and Gross that the "adverse and hostile treatment constituted unlawful discrimination and retaliation." (*Id.* ¶ 138(e).)

She claims that her employer, her supervisors and Gross retaliated against her for complaining about and reporting her supervisors' conduct. (*Id.* ¶ 138.) Specifically, she alleges that her supervisors accused her of being "a liar and untrustworthy" (*id.* ¶ 138(b)), and that Joseph Cohen and Robert Cohen ridiculed her (*id.* ¶ 138(a)). She maintains that she did not receive full and timely wage supplements/benefits, despite repeated complaints to Ilan Cohen and Gross (*id.* ¶ 138(c)), and that the defendants stopped paying her wages as of October 20, 2017, constituting discharge from employment (*id.* ¶ 138(d)). She claims that her supervisors and Gross "undertook an intentional pervasive pattern of unlawful retaliation" against her; they wrongfully accused her of violating her legal and ethical duties to her employer, commenced a frivolous lawsuit against her, and humiliated and embarrassed her by serving her improperly. (*Id.* ¶ 138(e).) She alleges that a pre-suit demand letter dated November 27, 2017 put the defendants on notice of her claims before they commenced the lawsuit against her on February 1, 2018. (*Id.* ¶ 138(e)(ii).) She filed an EEOC charge on February 16, 2018. (*Id.* ¶ 138(e)(iii).) The allegedly improper service took place twice—on or about February 26, 2018 and June 1, 2018—when the summons with notice was posted and affixed to the lobby door of her apartment building.[3] (*Id.*)

---

[3] The plaintiff does not clearly explain how service was improper, humiliating and embarrassing. In some circumstances, "affixing the summons to the door" is acceptable. *See* N.Y. C.P.L.R. § 308(4).

Two of the plaintiff's eleven causes of action are directed at defendant Gross: violations of § 296, *et seq.*, of the Executive Law of the State of New York (Sixth Cause of Action), and violations of Title 8 of the Administrative Code for the City of New York (Eleventh Cause of Action). The plaintiff claims that Gross is liable for retaliation under both causes of action as an "aider and abettor." (*Id.* ¶¶ 221, 302.)

## STANDARD OF REVIEW

In order to survive a motion to dismiss, a complaint must plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). A claim is plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Matson v. Bd. of Educ.*, 631 F.3d 57, 63 (2d Cir. 2011) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)) (internal quotation marks omitted). While "detailed factual allegations" are not required, "[a] pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.'" *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 555). Pleadings are to be construed in the light most favorable to the plaintiff. *Hayden v. Paterson*, 594 F.3d 150, 160 (2d Cir. 2010). "The pleading requirements in discrimination cases are very lenient, even *de minimis*," *Deravin v. Kerik*, 335 F.3d 195, 200 (2d Cir. 2003) (quoting *Brown v. Coach Stores, Inc.*, 163 F.3d 706, 710 (2d Cir.1998)) (internal quotation marks omitted), but "a complaint's allegations must nevertheless at least 'permit the court to infer more than the mere possibility of misconduct,'" *Richardson v. City of New York*, No. 17-CV-9447, 2019 WL 1512646, at *2 (S.D.N.Y. Apr. 8, 2019) (quoting *Iqbal*, 556 U.S. at 679).

## DISCUSSION

Defendant Gross argues that the plaintiff's complaint does not state a plausible claim against him under the New York State Human Rights Law or the New York City Human Rights Law, and that the Court has no jurisdiction over the claims asserted against him. (ECF No. 43-1.)

### I. Sufficiency of Allegations

Under the NYSHRL and the NYCHRL, it is unlawful to retaliate against someone because she has opposed a practice forbidden under the respective laws, or because she has filed a complaint. N.Y. Exec. Law § 296(7); N.Y.C. Admin. Code § 8-107(7). The laws also prohibit aiding and abetting forbidden practices. N.Y. Exec. Law § 296(6); N.Y.C. Admin. Code § 8-107(6). "For an aiding and abetting claim to proceed, the predicate unlawful conduct must first be established." *Rivera v. Balter Sales Co. Inc.*, No. 14-CV-1205, 2014 WL 6784384, at *3 (S.D.N.Y. Dec. 1, 2014); *see also Wilkinson v. New York State*, No. 2:18-CV-4148, 2019 WL 5423573, at *17 (E.D.N.Y. Oct. 22, 2019) ("[T]he NYSHRL and NYCHRL require that liability must first be established as to the employer/principal before accessorial liability can be found as to an alleged aider and abettor.") (quoting *Jain v. McGraw-Hill Cos.*, 827 F. Supp. 2d 272, 277 (S.D.N.Y. 2011)) (internal quotation marks omitted).

#### i. NYSHRL Claim

"To state a claim for retaliation under . . . the NYSHRL, a plaintiff must plausibly allege that 'defendants discriminated—or took an adverse employment action—against [her] . . . because [she] has opposed any unlawful employment practice.'" *Simon v. City of New York*, No. 17-CV-9575, 2019 WL 916767, at *10 (S.D.N.Y. Feb. 14, 2019) (quoting *Riddle v. Citigroup*, 640 F. App'x 77, 79 (2d Cir. 2016)); *see also Vega v. Hempstead Union Free Sch. Dist.*, 801

F.3d 72, 90 (2d Cir. 2015). A plaintiff must "plausibly plead a connection between the [adverse] act and h[er] engagement in protected activity," and she "must allege that the retaliation was the 'but-for' cause of the employer's adverse action." *Riddle*, 640 F. App'x at 79 (quoting *Vega*, 801 F.3d at 90) (internal quotation marks omitted).

"A claim of aiding and abetting under N.Y. Exec. Law § 296(6) requires 'a showing that the defendant *actually participated* in the conduct giving rise to the claim of discrimination.'" *Rivera*, 2014 WL 6784384, at *5 (quoting *Fried v. LVI Servs., Inc.*, No. 10-CV-9308, 2011 WL 2119748, at *7 (S.D.N.Y. May 23, 2011)). The aider and abettor must "share the intent or purpose of the principal actor" to be liable, "and there can be no partnership in an act where there is no community of purpose." *Id.* (internal citations and quotation marks omitted). Accordingly, there must be "direct, purposeful participation" by the defendant. *Id.* (internal citations and quotation marks omitted). Aider and abettor liability is not limited to employers and employees with authority to make decisions, *see Tomka v. Seiler Corp.*, 66 F.3d 1295, 1317 (2d Cir. 1995), and it extends to attorneys, *see Rivera*, 2014 WL 6784384, at *5.

As for the predicate retaliation claim, the plaintiff sufficiently alleges that she engaged in protected activities. She states that she complained to her employer about her supervisors' actions "throughout her tenure of employment," and repeatedly advised her supervisors and Gross that the treatment she experienced "constituted unlawful discrimination and retaliation." (ECF No. 1 ¶¶ 137, 138(e).) She "placed [the defendants] on notice" of her discrimination claims "by a pre-suit demand letter dated November 27, 2017," and filed an EEOC charge on February 16, 2018. (*Id.* ¶¶ 138(e)(ii)-(iii).) The informal complaints, pre-suit demand letter and the filing of an EEOC charge are all protected activities. *See Giscombe v. N.Y.C. Dep't of Educ.*, 39 F. Supp. 3d 396, 401 (S.D.N.Y. 2014) ("Informal complaints to supervisors . . . or filing a

formal complaint are protected activities.") (internal citation and quotation marks omitted); *Chukwueze v. NYCERS*, 643 F. App'x 64, 65 (2d Cir. 2016) (summary order) ("Informal complaints may constitute protected activity."); *Bethea v. JP Morgan Chase & Co.*, No. 15-CV-3544, 2019 WL 4805141, at *12 (E.D.N.Y. Sept. 30, 2019) (finding that a demand letter that outlined discrimination charges constituted protected activity).

The plaintiff also sufficiently alleges that she experienced an adverse employment action, at least at this early stage of the litigation. In the retaliation context, an employment action is adverse if it "could well dissuade a reasonable worker from making or supporting a charge of discrimination." *Vega*, 801 F.3d at 90 (quoting *Burlington N. & Santa Fe Ry. Co. v. White*, 548 U.S. 53, 57 (2006)) (internal quotation marks omitted). "Courts in the Second Circuit have taken a 'generous' view of retaliatory acts at the motion to dismiss stage." *DeVore v. Neighborhood Hous. Servs. of Jamaica Inc.*, No. 15-CV-6218, 2017 WL 1034787, at *10 (E.D.N.Y. Mar. 16, 2017) (citing *Kelly v. Howard I. Shapiro & Assocs. Consulting Eng'rs, P.C.*, 716 F.3d 10, 17 (2d Cir. 2013)). The plaintiff alleges that she faced ridicule and accusations after she complained to her employer, and did not receive full and timely wage supplements/benefits and was fired. (ECF No. 1 ¶¶ 138(a)-(d).) She also maintains that after her pre-suit demand letter put the defendants on notice of her claims, the defendants—including Gross—retaliated by commencing a frivolous lawsuit against her and serving her improperly. (*Id.* ¶¶ 138(e)(ii)-(iii).) "[G]iven the 'generous' construction of adverse employment actions," *Devore*, 2017 WL 1034787, at *10, I find that most, if not all, of these actions qualify. *See McDonough v. N.Y.C. Dep't of Educ.*, No. 16-CV-04272, 2018 WL 4636834, at *7 (S.D.N.Y. Sept. 27, 2018) (finding that termination from employment constituted an adverse employment action); *Cowan v. City of Mount Vernon*, No. 14-CV-8871, 2017 WL 1169667, at *9 (S.D.N.Y. Mar. 28, 2017) ("Examples of materially

adverse changes include termination of employment, a demotion evidenced by a decrease in wage or salary, . . . a material loss of benefits, . . . or other indices unique to a particular situation.") (quoting *Terry v. Ashcroft*, 336 F.3d 128, 138 (2d Cir. 2003)) (internal quotation marks omitted); *Shi-Hsin Chang v. Phoenix Satellite Television (U.S.), Inc.*, No. 14-CV-2686, 2014 WL 5017838, at *7 (S.D.N.Y. Sept. 22, 2014) ("[A] lawsuit may rise to the level of retaliatory conduct" if it is "filed with a retaliatory motive and . . . without a reasonable basis in fact or law.").

The plaintiff also sufficiently alleges causation with respect to the retaliatory conduct that implicates defendant Gross. "A retaliatory purpose can be shown indirectly by timing: protected activity followed closely in time by adverse employment action." *Vega*, 801 F.3d at 90. In addition to alleging that she complained throughout her employment—from February of 2016 to October of 2017—the plaintiff alleges that her pre-suit demand letter was dated November 27, 2017. (ECF No. 1. ¶¶ 124-26, 137, 138(e)(ii).) The defendants commenced an allegedly retaliatory and frivolous lawsuit against her approximately two months later, on February 1, 2018. (*Id.* ¶ 138(e)(ii).) The plaintiff filed an EEOC charge on February 16, 2018. (*Id.* ¶ 138(e)(iii).) The defendants served her—she says improperly—for the first time ten days later, on February 26, 2018.[4] (*Id.*) Considering the close temporal proximity between the alleged protected activity and adverse actions—periods of approximately two months, and ten days—I find that the plaintiff has adequately pleaded causation to allow her retaliation claim to survive at this stage. *See Vega*, 801 F.3d at 92 (finding that actions that followed protected activity by less than "three months," "two months," and "approximately two months" were temporally

---

[4] It is not clear if the defendants had notice that the plaintiff filed her EEOC charge by this date. Even if they did not have notice, the first allegedly improper service was within three months of the plaintiff's pre-suit demand letter.

8

proximate for the purpose of alleging causation); *Harewood v. N.Y.C. Dep't of Educ.*, No. 18-CV-05487, 2019 WL 3042486, at *8 (S.D.N.Y. May 8, 2019), *report and recommendation adopted*, 2019 WL 2281277 (S.D.N.Y. May 29, 2019) ("While there is no 'bright line' for determining when temporal proximity is sufficient to plausibly allege causation, courts within the Second Circuit generally have held that 'the temporal nexus between the protected activity and the adverse employment action must be three months or less to establish a causal connection.'") (quoting *Jackson v. N.Y. State Office of Mental Health*, No. 11-CV-7832, 2012 WL 3457961, at *11 (S.D.N.Y. Aug. 13, 2012)); *Cunningham v. Consol. Edison Inc.*, No. 03-CV-3522, 2006 WL 842914, at *19 (E.D.N.Y. Mar. 28, 2006) ("[A] passage of two months between the protected activity and the adverse employment action seems to be the dividing line.") (collecting cases).

Although the plaintiff does not allege that Gross participated in all of the retaliatory conduct that gives rise to her claims, she sufficiently alleges that Gross participated in some of it. She claims that Gross acted with her supervisors and engaged in "intentional" retaliation against her; he and the other defendants tried to "harass and dissuade" her from raising discrimination claims. (ECF No. 1 ¶ 138(e).) She alleges specific examples of Gross's direct participation: he represented the defendants in commencing a frivolous lawsuit against her,[5] and "intentionally humiliated and embarrassed" her by serving her improperly. (*Id.* ¶¶ 138(e)(ii)-(iii).) These claims may not survive summary judgment, but they are sufficient for this stage of the litigation; courts have found that minimal allegations suffice as long as they demonstrate an individual's active participation in the retaliatory conduct. *See, e.g., Ulrich v. Soft Drink, Brewery Workers*

---

[5] Allegations that a lawyer represented a client in a litigation are not sufficient to state a claim for aiding and abetting retaliation. However, here the plaintiff alleges more; she claims that Gross and the other defendants commenced the lawsuit with shared intent to harass and dissuade her from pursuing her claims.

9

*& Delivery Employees, Indus. Employees, Warehousemen, Helpers & Miscellaneous Workers, Greater New York & Vicinity, Local Union No. 812*, 2019 WL 6498089, at *6 (S.D.N.Y. Dec. 3, 2019) (collecting cases in which allegations that individuals participated in retaliatory actions sufficed to show aiding and abetting at the motion to dismiss stage, and concluding that allegations that individuals orchestrated a retaliatory investigation against the plaintiff sufficed); *Robinson v. Gucci Am.*, No. 11-CV-3742, 2012 WL 259409, at *5 (S.D.N.Y. Jan. 27, 2012) (finding that even though there were "no allegations that [the defendant] participated in the discrimination that gave rise to [the plaintiff's] initial complaints regarding a hostile work environment," the plaintiff "adequately pleaded a claim against [him] for aiding and abetting retaliation against her" by alleging that (1) he ordered the plaintiff to report to work in a different office and (2) the plaintiff complained to him that "she was being subjected to retaliation").

### ii. NYCHRL Claim

Courts are required to interpret the NYCHRL independently from the NYSHRL. *Shi-Hsin Chang*, 2014 WL 5017838, at *8. "[T]o prevail on a retaliation claim under the NYCHRL, the plaintiff must show that she took an action opposing her employer's discrimination, and that, as a result, the employer engaged in conduct that was reasonably likely to deter a person from engaging in such action." *Mihalik v. Credit Agricole Cheuvreux N. Am., Inc.*, 715 F.3d 102, 112 (2d Cir. 2013) (internal citations omitted). "New York courts have broadly interpreted the NYCHRL's retaliation provisions." *Id.* Because "the NYSHRL represents 'a floor below which the City's Human Rights law cannot fall[,]' . . . claims found sufficient under the NYSHRL necessarily must survive under the NYCHRL." *Shi-Hsin Chang*, 2014 WL 5017838, at *8 (quoting N.Y.C. Local Law No. 85 § 1 (2005)). Accordingly, I conclude that the plaintiff has stated a claim against Gross under the NYCHRL.

## II. Jurisdiction

A plaintiff seeking to bring a lawsuit in federal court must establish that the court has subject matter jurisdiction over the action. *See, e.g., Rene v. Citibank NA*, 32 F. Supp. 2d 539, 541-43 (E.D.N.Y. 1999). "If subject matter jurisdiction is lacking, the action must be dismissed." *Lyndonville Sav. Bank & Trust Co. v. Lussier*, 211 F.3d 697, 700-01 (2d Cir. 2000). If the court has original jurisdiction, it has "supplemental jurisdiction over all other claims that are so related to claims in the action within such original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution," including "claims that involve the joinder or intervention of additional parties." 28 U.S.C. § 1367(a). "[C]laims form part of the same case or controversy if they derive from a common nucleus of operative fact." *Eng v. City of New York*, 715 F. App'x 49, 54 (2d Cir. 2017) (summary order) (quoting *Shahriar v. Smith & Wollensky Rest. Grp., Inc.*, 659 F.3d 234, 245 (2d Cir. 2011)). Exercising supplemental jurisdiction is discretionary. *Crawford v. US Sec. Assocs.*, No. 19-CV-105, 2020 WL 61171, at *6 (S.D.N.Y. Jan. 6, 2020). A court may decline to exercise it if "(1) the claim raises a novel or complex issue of State law, (2) the claim substantially predominates over the claim or claims over which the district court has original jurisdiction, (3) the district court has dismissed all claims over which it has original jurisdiction, or (4) in exceptional circumstances, there are other compelling reasons for declining jurisdiction." 28 U.S.C. § 1367(c). "In deciding whether to exercise jurisdiction over supplemental state-law claims, district courts should balance the values of judicial economy, convenience, fairness, and comity." *Klein & Co. Futures v. Bd. of Trade of City of New York*, 464 F.3d 255, 262 (2d Cir. 2006).

Gross argues that there is no basis for exercising supplemental jurisdiction over the claims asserted against him. I disagree. The Court has subject matter jurisdiction over the

plaintiff's Title VII and Fair Labor Standards Act claims, and the plaintiff's NYSHRL and NYCHRL claims "derive from a common nucleus of operative fact." *See Eng*, 715 F. App'x at 54. The plaintiff's Title VII retaliation claim concerns her employer's alleged actions in response to her complaints of discrimination and harassment. Her NYSHRL and NYCHRL retaliation claims are based on some of the very same conduct, including that the defendants refused to pay her full and timely wage supplements/benefits, discharged her from employment and filed a frivolous lawsuit against her.[6] Exercising jurisdiction over the state law claims against Gross is proper, even though there are no federal claims against him. *See Conte v. Cnty. of Nassau*, No. 06-CV-4746, 2010 WL 3924677, at *30 (E.D.N.Y. Sept. 30, 2010) ("[I]t is proper for the Court to exercise supplemental jurisdiction over plaintiff's state-law claims against [two defendants], even though there are no remaining federal claims against them, because the Court may exercise pendent party jurisdiction when the claims against additional parties arise out of the same set of facts as the federal claims in a particular case."); *Kirschner v. Klemons*, 225 F.3d 227, 239 (2d Cir. 2000) ("28 U.S.C. § 1367(a) . . . makes pendent party jurisdiction possible where the claim in question arises out of the same set of facts that give rise to an anchoring federal question claim against another party."). The Court has not dismissed any of the plaintiff's federal claims, and judicial economy, convenience and fairness support keeping the claims in one judicial proceeding. *See Klein*, 464 F.3d at 262.

## CONCLUSION

For the reasons stated above, I deny defendant Gross's motion to dismiss for failure to state a claim and for lack of subject matter jurisdiction.

---

[6] The plaintiff states facts that apply to all causes of action and incorporates these facts by reference for each cause of action.

**SO ORDERED.**

s/Ann M. Donnelly

ANN M. DONNELLY
United States District Judge

Dated: March 17, 2020
      Brooklyn, New York